UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | NO. 2:14-CR-116 |
| | ) | |
| WILLIAM ANTHONY HOFFA | ) | |

**REPORT AND RECOMMENDATION**

Defendant William Hoffa ("Hoffa") has filed a Motion to Suppress Evidence and Statements [Doc. 50]. The United States has filed a Response [Doc. 61]. This matter is before the Court pursuant to 28 U.S.C. § 636 for a Report and Recommendation. An evidentiary hearing was held on March 22, 2016.

**I.  INTRODUCTION**

The Grand Jury returned a three count indictment charging Hoffa with possession, receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(1), (2), and (5)(B) [Doc. 3]. Law enforcement seized a cell phone purportedly belonging to Hoffa when they arrested him at 1009 W. 2nd North Ave. Morristown, Tennessee. Hoffa gave a statement at the Morristown Police Department after signing a *Miranda* waiver. He refused, however, to sign any written statement. Although he also signed a written consent authorizing law enforcement to search his cell phone, Detective Michael O'Keefe ("O'Keefe") obtained a state search warrant prior to accessing and searching the contents of Hoffa's cell phone. Upon a search of his cell phone, law enforcement discovered multiple images of alleged child pornography.

Hoffa has now filed a Motion to Suppress in which he seeks to suppress all evidence obtained as a result of his arrest at 1009 W. 2nd North Ave. Morristown, Tennessee, and the seizure of his cell phone. He contends that his arrest at 1009 W. 2nd North Ave. violated the

1

Fourth Amendment because officers came to the home "without a warrant or probable cause to arrest him" [Doc. 50, pg. 1]. He also contends officers obtained his cell phone in violation of the Fourth Amendment when they searched the home without a search warrant. He also argues that law enforcement searched his cell phone without a search warrant and without valid consent. Concerning his statements, he contends that any statement he gave was obtained in violation of *Miranda* and was otherwise involuntary.

The government responded, contending that Hoffa's arrest and seizure of his cell phone were not in violation of the Fourth Amendment. The government insists that Hoffa's arrest occurred only after O'Keefe obtained a valid state issued arrest warrant, and officers found his cell phone in his immediate vicinity where he was arrested. The government also argues that law enforcement interviewed Hoffa only after advising him of his *Miranda* warnings and having him execute a waiver that contained both the *Miranda* rights and an affirmative waiver of those rights. Further, the government argues that law enforcement searched Hoffa's cell phone only after Hoffa consented to the search and O'Keefe obtained a state issue search warrant for the phone.

## II.   TESTIMONY AT THE HEARING

At the hearing, O'Keefe testified that he received a "cybertip" from the National Center for Missing and Exploited Children ("NCMEC") that a certain google.com user was accessing child pornography using a public IP address. (Exhibits 4-8). That IP address was used to access a number of different email accounts including "hackertonight@gmail.com" that were being used to upload images of child pornography. O'Keefe conducted a "WHOIS"[1] check on the IP

---

[1] WHOIS is "an online database containing records revealing the owners of certain Internet Protocol (IP) addresses…." *United States v. Woods*, 421 F. App'x 554, 555 (6th Cir. 2011).

address and learned that AT&T was the Internet Service Provider ("ISP") for that particular IP address. He subpoenaed account information from AT&T which disclosed the particular IP address was associated with an account held by Ms. Betty Richards, 1312 Lennie Ave. Morristown, Tennessee. On June 9, 2014, O'Keefe obtained a state search warrant for that residence.

On June 11, 2014, he executed the search warrant along with other officers. He testified that during the execution of the search warrant, he interviewed Mr. Bobby Richards, who lived there. Mr. Richards told O'Keefe that he did not view child pornography, but that William Hoffa, the Defendant, who had a prior felony sex related conviction, had stayed at his residence and would use the computer. (Exhibit 12). Richards also advised that Hoffa would stay as long as two weeks at a time at his residence. O'Keefe knew Hoffa was a registered sex offender who was required to register pursuant to the Tennessee Sex Offender Registry law. Richards advised O'Keefe that Hoffa dated Richards' sister, Ms. April Richards, and that she just moved to 1009 W. 2nd North Street, Morristown, Tennessee and drove a red SUV. Based on information Richards provided, O'Keefe dispatched two officers to 1009 W. 2nd North Street while he obtained an arrest warrant for Hoffa for violating the Tennessee Sex Offenders Registry law.

After obtaining the arrest warrant, (Exhibit 15), O'Keefe met the other officers at 1009 W. 2nd North Street. He and Officer Matt Stewart ("Stewart") went to the front of the house and knocked on the door. From where Stewart was standing at the front door, Stewart could see into the residence and saw Hoffa using a cell phone. Stewart advised O'Keefe that he saw Hoffa using the cell phone. O'Keefe believed that Ms. April Richards opened the door and let them in.

Officer Blake Zion ("Zion") who had been around back also entered the home and performed a protective sweep of the home. O'Keefe testified that he asked Ms. April Richards

for consent to search the home and that she only consented to a search of her bedroom. He accompanied Ms. April Richards upstairs and searched her dresser. He discovered some articles of clothing purportedly belonging to Hoffa. When he returned from upstairs, O'Keefe testified that the other officer had found Hoffa's cell phone. He could not recall who handed him Hoffa's cell phone but believed that Stewart found the cell phone in an area right next to where Hoffa had been sitting when they entered the room. But O'Keefe testified he did not know where the cell phone was found. O'Keefe recalled asking Hoffa about the cell phone and Hoffa denying using one. He seized the cell phone and placed it in airplane mode to prevent destruction of its contents. He then transported Hoffa to the Morristown Police Department to be questioned.

At the police department, O'Keefe watched Detective Ron Sergeant interview Hoffa. He witnessed Hoffa sign the *Miranda* waiver and consent to search his cell phone. (Exhibits 17, 18). He observed no coercion or threats. O'Keefe later obtained another arrest warrant, charging Hoffa for violation of Sex Offender Registry law for staying at 1009 W. 2nd North Street without registering that as a residence (Exhibit 19). He also obtained a state search warrant for Hoffa's cell phone. (Exhibit 23). After obtaining the search warrant for Hoffa's cell phone, he performed a forensic analysis and discovered images of what he described as child pornography.

Officer Matt Stewart testified that he was assisting O'Keefe in the execution of a search warrant at Lennie Ave. and later an arrest warrant for Hoffa at 1009 W. 2nd North Street. At 1009 W. 2nd North Street, he accompanied O'Keefe to the front door and knocked. The door had windows through which he could see Hoffa sitting in a chair with a cell phone in his hand. He told O'Keefe, before they entered the house, that he could see Hoffa with a cell phone. He testified that he believed the younger female answered the door, and that he or O'Keefe advised her that they had a warrant for Hoffa's arrest. They entered the residence at that point.

Stewart recalls at one point O'Keefe asking Hoffa about the cell phone, and that Hoffa denied that he had used a cell phone. At that point, Stewart recalled telling Hoffa, "I saw you on the phone when I knocked on the door." Soon thereafter, Stewart found the phone lying on the table in the living room. He testified that it was the same phone that he had just seen Hoffa holding when he peered through the front door window.

Officer Blake Zion also testified that he secured the scene at 1312 Lennie Ave. and accompanied Stewart to 1009 W. 2nd North Street at O'Keefe's direction. He saw the red SUV in the driveway at that residence. When O'Keefe arrived with the arrest warrant, he went around the back of the house to make sure no one would flee the residence while the arrest warrant was being served. He then came around to the front of the house and entered through the front door. He recalls doing a protective sweep of the house after the older lady came out of the kitchen area. He found no one upstairs. He did not recall anything about the cell phone.

Detective Ron Sergeant testified that he met with Hoffa at the Morristown Police Department and read him the *Miranda* warnings. Hoffa signed the waiver and agreed to speak with him. (Exhibit 17). He testified that he did not threaten or coerce Hoffa to sign the waivers. He testified that Hoffa would not sign any statement, but did agree to talk with him. Sergeant also asked if he would consent to a search of his cell phone. Hoffa signed a written authorization for a complete search of his cell phone. (Exhibit 18).

Hoffa then presented his proof. Anthony Horne testified that he had worked as a lieutenant at Cocke County jail overseeing the County's Sex Offender Registry. He testified that Hoffa had registered in Cocke County in June 2013. He also testified that Hoffa had consulted with him, after Hoffa had been arrested in Morristown in June 2014, about whether he could visit

5

his girlfriend in Hamblen County. Horne claimed that he told him he would have to contact Hamblen County.

P.J. Eley, who lives in Cocke County, testified that in June 2014, Hoffa lived in Eley's motorhome at the end of his lot on 401 Vinson Field Way in Cocke County, Tennessee. He indicated that he did not know his whereabouts all the time as he was not his "probation officer."

Ms. April Richards testified that she owned the home at 1009 W. 2nd North Street. In contrast to O'Keefe's testimony, she testified that she was asleep in bed when two officers and her mother woke her up in her bedroom. She claimed O'Keefe asked her, while she was still in bed, whether the cell phone on the night stand was hers and asked for her permission to look at it. She gave him permission to examine it, which he did, and returned it to her. She testified that O'Keefe asked for her consent to search the white dresser in her bedroom to determine if Hoffa kept any of his clothes there. She gave O'Keefe consent and told him that Hoffa had a couple of his outfits in the top drawer.

After O'Keefe searched the dresser and took a few pictures, she accompanied him back downstairs and entered the living room where she saw Hoffa handcuffed in between the living room and dining room passageway. This passageway was on the other side of the room from where she kept a dresser full of clothes. She claims she had removed all the drawers from the dresser and had stored clothes where the drawers would have been. She then testified that an officer walked over to the dresser and rifled through the clothes looking for Hoffa's cell phone. She claimed the officer eventually discovered the cell phone hidden under some clothes in the dresser.

Ms. Betty Richards testified that she is the mother of Ms. April Richards and Mr. Bobby Richards. She said she had lived at 1312 Lennie Ave with her son. In contrast to Mr. Bobby

Richards' statement (Exhibit 14), she claimed Hoffa never spent the night at 1312 Lennie Ave. She said she left 1312 Lennie Ave. to move in with her daughter a couple of days after her daughter bought the home at 1009 W. 2nd North Ave. She testified that when officers arrived on June 11, 2014, she was sitting with Hoffa in the living room. When officers knocked, Hoffa opened the door. At that point, officers came in and handcuffed Hoffa. She testified that officers asked her who owned the home, and that she told them her daughter did, and that she was asleep upstairs. She said officers then accompanied her to her daughter's bedroom and woke up her daughter. One officer asked to examine her daughter's cell phone, which she permitted. When they returned downstairs, she testified that she saw an officer looking through the dresser in the living room where the officer found Hoffa's cell phone hidden under some clothes.

## III. FINDINGS OF FACT

On June 9, 2014, O'Keefe obtained a state search warrant for that residence. On June 11, 2014, O'Keefe and a number of other officers executed that search warrant at 1312 Lennie Ave. Morristown, Tennessee. During the execution of the search warrant, O'Keefe interviewed Mr. Bobby Richards, who lived there. Richards denied any involvement in child pornography but identified Hoffa as having stayed at his residence for as long as two weeks at a time and as having used the internet during his stay. Mr. Richards advised O'Keefe that Hoffa was dating Richards' sister, April Richards, and that she had recently purchased a home at 1009 W. 2nd North Street, Morristown, Tennessee. He told O'Keefe that his sister had a red SUV and that Hoffa would most likely be with her at her residence.

Between 11:30 and 12:00 p.m. on that day, O'Keefe obtained an arrest warrant for Hoffa for a violation of the Tennessee Sex Offender Registry law. The warrant alleged that Hoffa "had stayed the night numerous times at 1312 Lennie Ave., Morristown, Tennessee during the month

7

of April 2014 and most recently on May 5, 2014" in violation of the Tennessee Sex Offender Registry law. (Exhibit 15).

In the meantime, he dispatched Officers Stewart and Zion to 1009 W. 2nd North Street in Morristown, to determine if Ms. April Richards and Hoffa were there. The home had a sidewalk off the driveway that led to a small front porch. (Exhibit 32). The front door had six small windows at approximately eye-level through which one could see inside the house if one were standing at the door knocking. The windows were unobstructed.

Stewart and Zion parked down the street from the driveway of 1009 W. 2nd North Street and observed a vehicle that matched the description given by Mr. Bobby Richards. They surveilled the home while they waited for O'Keefe to arrive with the warrant for Hoffa's arrest. When O'Keefe arrived with the warrant, he and Stewart walked to the front door of the residence. Standing at the front door, Stewart could see Hoffa sitting to the left in the living room, with a cell phone, through the front door windows. Next to Hoffa was the coffee table in the middle of the room. Before they entered the residence, Stewart told O'Keefe what he saw inside.

The investigation into who, at 1312 Lennie Ave Morristown, Tennessee, had accessed child pornography was still on-going. O'Keefe knew that Hoffa had stayed at 1312 Lennie Ave., used the internet there with his cell phone (Exhibit 13), and presently had a cell phone in his possession.

They knocked, and Ms. April Richards answered the door.[2] After advising her that they had a warrant for Hoffa's arrest, they entered the house into the living room. O'Keefe asked

---

[2] Stewart testified that a white female answered the door, one who was younger than the other female in the house. Ms. Betty Richards was an older lady in the house, and Ms. April Richards was her daughter. Their appearances show an obvious difference in age.

8

Hoffa about his cell phone. Hoffa denied having one. Stewart then said, "I saw you on the phone when I knocked on the door."

Zion, who had been in the backyard, came around and also entered the residence through the front door. He asked if anyone else was in the house, and after Ms. Betty Richards appeared from the kitchen area, Zion decided to perform a protective sweep of the home to determine if anyone else was present. He found no one.

O'Keefe asked Ms. April Richards for consent to search the home in an effort to determine if Hoffa lived at that house. She gave O'Keefe consent to search her bedroom, but nowhere else. He accompanied her to the bedroom. He found a few articles of clothing belonging to Hoffa. O'Keefe and Ms. April Richards returned downstairs where Stewart turned over the cell phone to him. Stewart had found Hoffa's cell phone lying on the coffee table in the living room. It was the same cell phone Stewart had seen Hoffa holding when he saw him through the front door windows.

Zion handcuffed Hoffa, and O'Keefe transported him to the Morristown Police Department headquarters. Detective Ron Sergeant explained to Hoffa the *Miranda* warnings and asked if he would speak with him. Hoffa voluntarily signed the *Miranda* warnings and waiver form at 12:50 p.m. (Exhibit 17). Sergeant also asked Hoffa for consent to search his cell phone. Hoffa agreed and voluntarily signed a written consent form authorizing such a search. (Exhibit 18). Hoffa spoke with Sergeant, admitting to using the hackertonight@gmail.com account and visiting chat rooms where he downloaded "pictures."

## IV. DISCUSSION

### A. Law enforcement's seizure of Hoffa at his girlfriend's residence.

Hoffa claims that law enforcement entered the home at 1009 W. 2nd North Street Morristown, Tennessee "without a warrant or probable cause to arrest him" [Doc. 50, pg. 1]. The facts of the case show otherwise. O'Keefe had a warrant issued for Hoffa's arrest (Exhibit 15) prior to entering the residence to arrest him.[3] No evidence was presented that O'Keefe had not obtained the arrest warrant prior to entering 1009 W. 2nd North Street. Ms. April Richards allowed officers into her home after they knocked, and they arrested Hoffa without incident. The Court finds no Fourth Amendment violation with Hoffa's arrest at 1009 W. 2nd North Street.

Moreover, O'Keefe had ample probable cause to obtain an arrest warrant. Mr. Bobby Richards was quite clear that Hoffa stayed at 1312 Lennie Ave. for two weeks at a time. Because Hoffa was required to register under the Tennessee Sex Offender Registry law, he was required to register that residence as a secondary residence.[4] He did not. O'Keefe had sufficient evidence that Hoffa had failed to do so and was, therefore, in violation of the Tennessee Sex Offender Registry law. See T.C.A. § 40-39-203.

### B. Law enforcement's search of the home.

Hoffa also claims that "the search of the home was conducted without a search warrant

---

[3] The Court notes that in *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the U.S. Supreme Court found that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." In this case, the focus of Hoffa's motion was that his arrest was not supported by either an arrest warrant or probable cause.

[4] T.C.A. § 40-39-202(18) defines a secondary residence as a "place where the person …resides … for a period of fourteen (14) or more days in the aggregate during any calendar year and that is not the person's primary residence…." T.C.A. § 40-39-203 requires a sex offender "[w]ithin forty-eight (48) hours of establishing ….a secondary residence…[to] register or report in person, as required by this part."

and all tangible evidence obtained and seized are the fruits of an illegal seizure and should be suppressed." [Doc. 50, pg. 3]. The only item seized from the residence was Hoffa's cell phone.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. An exception to the warrant requirement is a search incident to arrest. *New York v. Belton*, 453 U.S. 454, 456 (1981). According to Hoffa's motion, the issue is whether law enforcement searched the residence without a warrant to find Hoffa's cell phone.

The Court, having considered the testimony of all the witnesses, finds that officers did not search the home to find the cell phone, but saw the cell phone in plain view on the table. The Court credits the testimony of Officer Stewart that he found the cell phone lying on the table in the living room within the immediate control of Hoffa. Stewart recognized the cell phone as the same cell phone he had just seen Hoffa holding in his hand. More importantly, officers did not search Hoffa's cell phone at this time. All they did was seize it and secure it from it being destroyed. The Court finds incredible the testimony of Ms. Betty Richards and Ms. April Richards that officers found the cell phone hidden under clothes in the dresser in the living room.

The Court finds that law enforcement did not violate the Fourth Amendment by seizing Hoffa's cell phone from the table. First, it is well-established that an officer is entitled to conduct a valid search of an individual's person and area within his immediate control without a warrant if the search is pursuant to a lawful arrest. *United States v. Buford*, 632 F.3d 264, 268 (6th Cir. 2011)(police may search "the arrestee's person and the area within his immediate control without obtaining a warrant…. to remove any weapons that the arrestee might seek to use in order to resist arrest or effect his escape and the need to prevent the concealment or destruction of evidence")(citing *Chimel v. California*, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 23

L.Ed.2d 685 (1969))(internal quotations omitted). In this case, the cell phone was in the same room as Hoffa and he was lawfully arrested. The cell phone was found in an area within Hoffa's immediate control. This is not a situation where the cell phone was found in some other location not connected to the immediate area where they arrested Hoffa. Although they performed a protective sweep of the home, they did not discover the cell phone because of that.

Second, the Court finds that officers properly seized Hoffa's cell phone under the plain view doctrine.[5] See *United States v. Mathis*, 738 F.3d 719, 732 (6th Cir. 2013). "Four factors must be satisfied in order for the plain view doctrine to apply: (1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object." *Id.*

The Court finds that all these factors to be present in this case that would otherwise justify officers seizing Hoffa's cell phone. First, Stewart found the cell phone lying on the table in plain view. It was not hidden in the dresser. Second, the officers were lawfully in the residence executing a warrant for Hoffa's arrest. They were allowed into the residence, and O'Keefe had obtained the warrant prior to his arrival at 1009 W. 2nd North Street. Third, the incriminating nature of Hoffa's cell phone was readily apparent. O'Keefe had probable cause to believe that Hoffa's cell phone, at the time of its discovery, was involved with child pornography given Hoffa's connection to 1312 Lennie Ave., a residence connected to accessing child pornography and Hoffa's use of the internet at that address. O'Keefe was also aware that, based on his interview of Mr. Bobby Richards earlier that day, Hoffa used the alias "Anthony Jones"

---

[5] "[The] seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

on the internet and that one of the email accounts associated with child pornography was "ajones262013@gmail.com." (Exhibits 4 and 14). Fourth, "[t]he final requirement, that the officer have a lawful right of access to the object, is meant to guard against warrantless entry onto premises whenever contraband is viewed from off the premises." *Boone v. Spurgess*, 385 F.3d 923, 928 (6th Cir. 2004). In this particular case, the Court finds that law enforcement had a lawful right of access to the premises as they were executing a warrant for Hoffa's arrest. For all of these reasons, the Court finds that Hoffa's cell phone was properly seized at the residence.

### C. Law enforcement's search of Defendant's cell phone.

Hoffa also argues that "[l]aw enforcement conducted a search of his cell phone without a warrant and without valid consent…." [Doc. 50, pg. 4]. At the hearing, the government introduced a copy of a state search warrant issued for Hoffa's cell phone. (Exhibit 23). O'Keefe testified that it was only after obtaining this search warrant that authorized the search of its contents that he conducted his forensic examination and discovered it contained child pornography. Hoffa pointed out some date and time issues that he argued supported his theory that O'Keefe searched Hoffa's cell phone prior to obtaining the search warrant. However, O'Keefe explained the apparent time discrepancies and testified that all of his forensic work on the cell phone occurred after he obtained the search warrant. The Court credits his testimony. Hoffa does not otherwise challenge the search warrant itself. Accordingly, the Court finds that the government searched Hoffa's cell phone only after obtaining a search warrant. See *Riley v. California*, 134 S. Ct. 2473, 2495, 189 L. Ed. 2d 430 (2014)("Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant").

### D. Whether Defendant's statements were procured in violation of *Miranda* or otherwise involuntary.

Hoffa also contends that his statements should be suppressed because "they were the product of custodial interrogation without the benefit of a valid *Miranda* waiver….The *Miranda* warnings given the defendant were constitutionally inadequate, and failed to provide him with the opportunity to make a knowing and intelligent waiver of his rights against self-incrimination." [Doc. 50, pg. 4-5]. He also claims that his statements were involuntary. He contends that his "statements to police were not the product of free will and therefore not voluntarily given…." [Doc. 50, pg. 5].

At the hearing, the government introduced an "Admonition and Waiver" (Exhibit 17). Hoffa signed the admonition and waiver form on June 11, 2014 at 12:50 p.m. Detective Sergeant testified that he reviewed the *Miranda* warnings with Hoffa prior to asking him any questions. The form contains the *Miranda* warnings and contains an affirmative waiver of those rights. Hoffa signed that form voluntarily, without coercion or duress. No evidence was presented to the contrary. The only testimony addressing this issue was that of Sergeant and O'Keefe. Both testified that no threats, duress or coercion was used to intimidate Hoffa into signing the forms. No evidence was presented that law enforcement threatened Hoffa with violence or made direct or indirect promises to him if he confessed or exerted any improper influences on him in an effort to secure a confession or obtain consent. The Court, having reviewed the entire video of part of the interview, observed no threats or coercion exerted on Hoffa. The Court notes that the interview was less than an hour long, Hoffa appeared to be comfortable, and he was provided a bottle of water. He appeared to be willing to talk with Sergeant. Hoffa also did not feel compelled to sign any written statement and so advised

14

Sergeant. All of that is consistent with someone voluntarily talking with an officer. The Court finds that Hoffa's statement was not involuntary.

V.   **CONCLUSION**

The Court RECOMMENDS that Hoffa's motion to suppress [Doc. 50] be DENIED.[6]

SO ORDERED:

s/ Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).